PER CURIAM.
Appellant, plaintiff below, suffered an involuntary dismissal[1] at the close of his ease in chief during the non-jury trial of this declaratory judgment action. Under the well established law of this jurisdiction, a motion for involuntary, dismissal made by *1184 the defendant at the close of the plaintiffs case in chief must be denied if the competent substantial evidence then before the court, considered in a light most favorable to the plaintiff, establishes a prima facie case. See Tillman, 260 So.2d at 511-12; Bottalico, 695 So.2d at 363 (citation omitted); Valdes v. Association I.N.E.D., H.M.O., Inc., 667 So.2d 856, 856-57 (Fla. 3d DCA 1996); Cohen v. Boca Woods Country Club Property Owners Ass’n, 632 So.2d 1142, 1142 (Fla. 4th DCA 1994). In our view, the evidence in this case, summarized below favorably to appellant, clearly met that standard. We therefore reverse and remand for further proceedings.
Prior to their divorce in January, 1993, the parties had entered into a property settlement agreement. It required the husband to convey to the wife his premarital condominium, but on the condition that she obtain refinancing of the existing mortgage (the “CalFed mortgage”), on which there was then a principal balance of $43,578. Several months later, after it had become apparent that appellee could not obtain the required re-financing of the CalFed mortgage, the parties modified the agreement. The written modification provided that (1) appellant would remain solely liable for the CalFed note and mortgage and would continue making the monthly payments of $1,200 for principal and interest, (2) appellee would give appellant a note and mortgage for $43,578, with principal and interest payable at $317.77 per month for thirty years (the “marital note and mortgage”), (3) appellant would convey title of the condominium to the parties as tenants in common and, after the CalFed mortgage had been paid in full, he would convey his remaining interest to appellee, provided the payments on the marital mortgage were current at that time, and (4) appellee would live in the condominium and be responsible for payment of the taxes and insurance. The property settlement agreement as modified was approved by the court and made a part of the final judgment of dissolution. Pursuant thereto appellee executed the marital mortgage and moved into the condominium, and appellant executed the deed. For the next four years appellee made her payments to appellant on the marital note and mortgage through the agreed device of appellant deducting $500 monthly from alimony payments (and later from child support), to pay principal and interest on the appellee’s note ($317) and escrow for taxes and insurance ($183). During that same time period appellant continued the payments on the CalFed note and mortgage.
In December, 1996, appellee was ready to close on a sale of the condominium. By that time appellant’s payments on the CalFed note and mortgage had reduced the principal balance to $7,014, which balance was to be paid from the sale proceeds at closing. Appellee’s payments on the marital note and mortgage, however, had only reduced the balance of that obligation to $41,939. Nonetheless, appellee took the position that since the balance due on the CalFed note and mortgage was to be paid in full at closing of the sale, the modification agreement obligated appellant not only to convey to her his remaining interest but also to satisfy the marital mortgage. Appellant would not meet appellee’s demand unless he received from the sale proceeds the sum of $34,925 (the $41,939 balance of the marital note and mortgage less the $7,014 balance due on the CalFed note). Appellee’s motion to enforce the final judgment of dissolution resulted in an order requiring appellant to execute all necessary documents to clear title to the condominium thus allowing the sale to be closed. The order also required the net proceeds from the sale to be placed in escrow pending a determination by a separate declaratory judgment of the parties’ respective rights and obligations under the marital note and mortgage, thereby giving rise to the instant case.
This evidence made a prima facie case for appellant’s theory that he had given appellee valuable consideration for the *1185 marital note and mortgage; specifically, that he had, by continuing to make the $1,200 monthly payments on the CalFed mortgage while she was paying him only $317 per month, effectively “refinanced” the CalFed mortgage when she had been unable to do so as required under their original property settlement agreement. This evidence also supported appellant’s alternative theory that his contractual obligation, upon the CalFed note and mortgage being paid in full, was limited to conveying title to his remaining interest, which had in fact been done, and did not require him to forego equitable relief for having advanced for appellee’s benefit more than $800 per month for four years.
The judgment is reversed and this cause remanded for further proceedings. The court may, in its discretion, grant the parties a new trial or reopen the trial at the point at which the error occurred.
Reversed and remanded.
GUNTHER, GROSS, JJ., and OWEN, WILLIAM C., Jr., Senior Judge, concur.

. Defendant called it a motion for directed verdict. In a bench trial a rule 1.420(b) motion under the Florida Rule of Civil Procedure is properly denominated as one for involuntary dismissal. See Tillman v. Baskin, 260 So.2d 509, 510-11 (Fla.1972). We have recognized that granting a motion for directed verdict in a bench trial is the functional equivalent of granting a motion for involuntary dismissal. See generally Bottalico v. Antonelli, 695 So.2d 363 (Fla. 4th DCA 1997).